On today's docket is the case of Henry and Mary for Deborah Dial versus Brian Dial and we have Mr. Harold Pike for the appellant and Mr. David Garavaglia for the appellant. So you may proceed. May it please the court. My name is Harold Pike and I represent the appellant Brian Dial. The facts of this case are fairly simple and will mostly stick it to a trial. Essentially this, Brian Dial and Deborah Perkins, formerly Brian and Deborah Dial, were divorced on December 3, 1999. They had two children, Amber and Cory. Both were born, they were twins, born November 29, 1999. What's unique is that Cory and Dial had cerebral palsy and was disabled. The parties entered into a property settlement agreement, we would call it a marriage settlement agreement, but essentially the same thing, which provided all the things that normally an agreement of that sort provides. Property, distribution of debts, custody of the children, child support, most importantly child support. It provided that Mr. Dial would pay support starting at $500 a month, $250 every two weeks. And if it had stopped there, it would have been an ordinary case, we would not be here now. But there's a second sentence in paragraph 7 of that property settlement agreement. And it reads, husband will provide child support for Cory and Dial until he is mentally and physically able to leave home. It is on that sentence that this case ends. September 17, 2009, Mr. Dial filed a petition to modify the judgment for dissolution of marriage. He essentially was attempting to terminate the support. Both of his children had reached the age of 18, both had finished high school. On April 26, 2010, Deborah filed her answer and a counter-petition to modify the judgment for dissolution of marriage, seeking to increase child support based upon the usual grounds that Mr. Dial was earning more money and that Cory Dial is not mentally or physically able to leave the petitioner's home due to a cerebral palsy. The case was finally set for trial and heard on September 16, 2010. The facts were stipulated by the parties. I'll paraphrase the stipulation. The first bit is that Cory Dial suffers cerebral palsy and is disabled. His disability is expected to remain ongoing for the rest of his life. Cory Dial lives with his mother, Deborah, and is expected to continue residing there out of choice. Without going into a lot of examples, there are state-supported institutions where Cory Dial could choose to live if he wanted to do so. Cory also had an income. He had SSI of $482 per month and he had a part-time job which paid between $174 and $220 per month. He had therefore an income of between $656 and $702. The stipulation went on further to provide that Brian Dial is now earning $730 a week. That's a payphone payment. The court listened to the arguments of the parties, having heard the stipulated facts, and determined that that important second sentence in paragraph 7 of the property settlement agreement, which provided that the husband will continue making support payments for Cory until he is mentally and physically able to leave home. The trial court determined and construed that sentence to mean that child support will be paid until Cory is able to live independently. That is, and of course, child support was then increased to fit Mr. Dial's current income pursuant to Section 505 of the Illinois Marriage and Discipline Summary Act. There are two issues in this case, really two. It's a very straightforward type of case. The first issue is, does that second sentence of paragraph 7 of the property settlement agreement mean that child support will be paid so long as Cory is unable to live independently, as the trial court determined? Or does it mean that child support is payable until Cory is able to live somewhere other than at his mother's home? Even though this is under, it's styled as a child support case under the Illinois Marriage and Dissolution of Marriage Act, it is in fact a property case, or I'm sorry, a contract case. The real issue is, what does this contract mean? Because the contract does vary from the statute. Under the statute, Section 505 provides that a child is someone who is under the age of 18 or is not having completed high school under the age of 19. After age 19 or 18 and completion of high school, you're no longer a child under Section 505 of the Illinois Marriage and Dissolution of Marriage Act. So in order for child support to continue, it must be a contract action. It must be based upon the contract that Mr. and Mrs. Dial entered into back in 1999. Going back 30 years or longer to law school, I went to the maxims to see what sort of guidance they would give us. The first maxim is, we're to construe a contract so as to give it back to the intention of the parties. Okay, straight out of Contracts 101. Next, we're to look at the intention of the parties to whom the contract must be determined from the language they employed, that they themselves used in their contract. The contract must be construed in accordance with its plain meaning. Next, the intention of the parties must be determined not by conjecture but within the four corners of the contract. And finally, where you can have more than one interpretation of a contract, if it is susceptible to more than one meaning, then that interpretation which makes the contract rational and probable must be the one that is preferred. So, having looked at the various legal maxims in order to determine how to construe this contract, I first would point out that, number one, the court made a determination first. I believe the court made an observation in any event. You'll find it on the supplemental transcript, page 16, line 326. The court stated that the fact that he, and in this case he means Corey, is mentally and physically able to leave home, that he could go to a state-supported facility, I do not believe is what the parties anticipated. The court basically granted that Corey was able to leave home. He was able. He could go to a state-supported facility. He had income. He was able. The parties stipulated he could go to a state-supported facility. The court granted that that was factual, but that's not what the parties meant. The court went on to say, to bring out and put on the record a, if you will, I guess an experience the court had with an autistic child that the court knew of, who had gone to a state-supported facility and learned life skills, such that he was able then to live independently outside of his parents' home. And the court went on to say, well, this must be what the parties had intended. But unfortunately, going back to the maxims we were talking about, giving rise to the means by which we interpret contracts, we cannot bring in these types of conjectures. The parties didn't say that. That's not what they said at all. What they said was, child support will be paid until Corey is able to leave home. Let me ask you this. Yes, sir. If they had not had this provision in their marital settlement agreement, would your client have been potentially bound simply on 750 Illinois Compiled Statutes 5-13A1? Well... It just doesn't seem like the wife can give away this child's right to support under the statute. All right. We've moved to issue number two. Okay. And essentially what issue number two says, assuming I'm right about issue number one, which of course is the court's determinant, but assuming I have interpreted the contract in accordance with the legal maxims, and in fact now child support is not payable, yes? Well, we could choose to go directly to number two if the court has that authority. The court, well... The trial court. The trial court could have done that, but there was one problem. Our stipulation was defective. We know that Corey had an income, but we do not know what his expenses were. And in order to determine under 513 of the Illinois Marriage and Dissolution of Marriage Act, we're not using Section 505 guidelines. They don't really apply. Section 513 provides the court... In fact, let me see if I can quote it. The court may award sums of money out of the property and income of either or both parties or the estate of the deceased parent, as equity may require, for the support of the child or children who have attained maturity. In the following instances, and this is where the child is mentally or physically disabled and not otherwise emancipated. And of course the court can do that. But in order to do that, the court must determine what does this child need? In some cases his income is 700 or between 656 and 700, low 700s, might be sufficient. Is it sufficient? What does he actually need? And no determination was made, and in fact no determination could have been made, under the stipulated facts that the trial court was given. But the trial court is authorized to award support to the child under these conditions. It's the amount you're arguing about. The court is authorized to do that. First of all, we're blending the two, if you will. First of all, the court made a determination that the contract that the parties had entered into provided that they would be, that Mr. Dow would be required to pay support until Cory was able to live independently. We believe that was incorrect, and that that provision was incorrect. It should not have been. That determination was wrong. Well, if we agree, we just eliminate that from the case. If we just simply deal with the statute, the child's entitled to support under these circumstances. I mean, if he, well, no. Your Honor, I don't agree with that. Yes, I really do. And I'm not trying to confuse or obfuscate any of this. I understand. Yes, that is entirely possible. The trial court could have done this. It couldn't have done this under these set of facts. But it could have done this. As a matter of fact, this court could even remand this case for such a determination under 513. This court has that ability. Now, why are you saying it couldn't have done it under the circumstances? Because there wasn't a petition? Well, there was a petition, but it was withdrawn. But easily another petition could be filed. The reason the court couldn't is the court knew Mr. Dow's income. So it could have made a determination under 505 if that had been applicable, but it wasn't. And the court knew Corey's income of between 656 and 72 or something like that. But what the court did not know is what expenses did Corey have. The court was never given that information. So the court had no means of determining what kind of support, what character of support Corey would have required if he required any. Were you prevented from doing that? Were you prevented from submitting this type of evidence? Your Honor, I wasn't the one asking for it. So no one was prevented from doing anything. This was the record the trial judge was given? He was given this record. And nobody asked to put in anything at the expenses of the father? Of the child. Of the child, or the father, or anything else? No. This is the record the trial court was given. So, having kind of skipped around a bit in my argument, but it's all in my brief. Essentially this, we think that this case should be reversed, and either reversed outright and child support terminated, or reversed and remanded with instructions to determine what type of support, if any, Corey actually requires. Obviously my client would prefer that it be reversed outright and child support terminated, effective on the date he files the petition. But if the court chooses not to do that, obviously a determination under 513 may still be had, and in all honesty a determination under 513 can be reinstituted at practically any time. But in any event, that would be essentially the argument of Mr. Dial. Unless there are any questions, I really have nothing further to add. Thank you all. Thank you. Do you have the opportunity for rebuttal? Yes, sir. Thank you. Thank you. Mr. Garibayle, yes? Yes, if it may please the court, I'm David Garibayle. I represent the petitioner's athlete in this case, Deborah Dial, now Kendra Perkins. Essentially Mr. Pike is correct on the interpretation of what we need to interpret here. We've got the standard $500 a month until the children reach the age of 18 and graduate from high school. Then we throw in this extra sentence in this property settlement agreement that says, the husband will provide child support to Corey Dial until he is mentally and physically able to leave home. So that's what we're here to interpret. What does mentally and physically able to leave home mean? Let me ask you this. If you're relying on that entirely, then why is it limited to $500? You're saying these payments that he's being required to pay are entirely based on this marital settlement agreement. And that was limited to $500, but the court awarded $632.67. How does that go together?  Because the athlete filed a petition to modify child support alleging that one, he was not able to leave home because of his cerebral palsy. And two, the fact that there's been a change in financial circumstances of the party. Well, is she doing that in connection with this contract she's entered into or in connection with 513A1? She did that for both. Because the law allows that to happen under 513. Because if a child is disabled, and I did write that down, I can certainly quote that. When a child is mentally and physically disabled and not otherwise emancipated, an application for support may be made before or after the child has obtained a jury. What do you need the marital settlement agreement for? Can't you just proceed under that section? Yes, you can. The law is clear on that. But in this particular situation, the appellant filed a petition to basically terminate child support because the children were over 18 and graduated from high school. Could that marital settlement, in effect, override Section 513A1? I don't think it could. Okay. Because that's the law now. And I think we have a law then that was just a little bit different back in 1999. So whenever we talk about leave home, we think the controlling case here is the Bungardner case. It was the Supreme Court case back in 2010. And it gives an analysis of what leave home means. That's what we're here to interpret. And as you look at the Bungardner case, it reviews various cases over the year. One of which is an excellent case, still good today, Hampshire Creek vs. Industrial Convention. It was when a minor supports himself, controls his own income, is without control of his parents, he's emancipated, and the parental obligation ceases. We go on down to even the Meyer case decided by this district, or even the Perisic case, which is a New York case. It's a lower court case, but it does define what leave home means. It's a very clear case, only two paragraphs. It says, Christopher left his mother's home, moved to Syracuse where he held a job, maintained an apartment, with no intentions of returning home to his mother. That's what leave home means. It doesn't take a whole lot to interpret that. And whenever the judge Lewis, at the trial court level, was talking about independence, he was talking about emancipation, which goes pretty much along with this Bungardner case in the analysis of whether self-emancipated minor is actually moved beyond the care, the custody, the control of his parents, such that the minor no longer needs to be supported. That's the exact word of independence. Factors in determining emancipation included the following. You leave the protection and influence of the parental home. You move beyond the care and control of your parents. You assume responsibility for your own care and whether continuing support is needed. In this case, there was child supported working until age 18 or graduated from high school. There was no dispute that Cory was disabled. And the parties apparently intended to provide for Cory, since that's what they put in their agreement, the child was physically and mentally able to leave home. It doesn't say if he's able to go to an institution or whether he's able to decide to go to an institution. This child was living at home whenever they all got dissolved in their marriage at age nine. He's still living in the home at this time in the case. So we believe the trial court was correct in interpreting leave home to mean independence. Basically, these parties sought to provide for a disabled child who was disabled from birth. There wouldn't have been a separate sentence to cover this if that had not been their intent, even under the plain meaning of the contract law. Is it your position that the court was required to allocate 20% of the father's income? No, that's not my position, but if I could address that next. In this case, the child that's reached maturity, the child that's disabled, would have to enter that 513A1. And basically, when a child is mentally and physically disabled and not otherwise emancipated during this application, the relevant factors are financial resources of the parents, the standard of living the child would have enjoyed, but for the dissolution of the marriage, the financial resources of the child and the child's academic, I've put in my brief preference that it should be performance. I noticed that after I read that thing again last night. Here, the trial court was able to observe all of those and consider those factors. Deborah Giles, her case, she filed an extensive financial application outlining the expenses, five or six page document, and it's in the record. It showed exactly what her income was. It showed what her expenses were for her home and her expenses. It also shows the appellant's net income of $730 per week. That was stipulated to you on his intent. There was no question about 40 SSI, 482, and the limited employment that he had with the ACE group, which used to be known as Williamson County Workshops. So, the trial court has broad discretion in making a determination of child support, and it's not going to be reversed in the absence of an abuse of discretion. The court was presented with this stipulation. It was presented with these facts, and in a word, 20% is not overly, seriously generous to a disabled child. In fact, the appellant's income is 2.2 times more than the appellee's income. So, whenever you look at this, and especially the Winters case, and that was a case that nothing in 513 prohibits the worrying percentage of income after considering the factors. Apparently, the trial court judge in the Winters case in finding that the child was disabled, if I remember correctly on the cases, awarded 20%, and apparently the appellants were sustained. So, it's not unusual. We could certainly go back. You know, the appellant put down his income, which we know is stipulated, too. I've never seen where his expenses would have anything, as far as being an employed person with an employer, if he was self-employed, his expenses would have something to do there. In fact, if he makes credit card payments or house payments, it's not going to be considered in this manner. And the court, in this case, was provided with that information, and had the affidavit on file, we knew what Corey's income was, and that's what the court concluded to be the correct amount of support to be paid in this manner. So, we don't think it's overly difficult or whatever. It's a stipulation. So, based upon the issue of emancipation, as a result of the disability of this child, and the extensive ruling of Judge Lewis in this matter, we believe this decision should be affirmed, as far as independence, and the court affirmed this to be child support to be awarded. Thank you. Thank you, Mr. Gavalia. Do you have any rebuttal, Mr. Pike? Just very shortly. Thank you. Basically, what has happened in this case is the Trump court interpreted and construed the property settlement agreement by the Parks as a contract action. The court made a determination, rightly or wrongly, that contract trumped the statute. The contract between the parties, the court determined, applied in this case, and accordingly, child support would be paid. Since it was child support, the court went directly to the 505 guidelines in the Elmwood Marriage and Dissolution Act. Well, that's what the court did. What the court could have done is another story. But what the court did, we believe, is an abuse of discretion. The court got it wrong. For instance, in our brief, we list an absurd situation, and it's intended to be absurd. It's ludicrous. But if the trial court was right, then the fact that Corey remains unable to live independently, if that triggers child support under 505, which the court found it did, then if Corey went to live in a state-supported institution, let's assume he did, he still isn't capable of living independently. Would child support still be paid? The missus died. Because under the trial court's determination, under its construction of the contract, that's exactly what will happen. We believe the trial court got it wrong. This case involves the mishmash of Section 505, 513, and contract law. First, we believe the court got it wrong, and it is a contract action, but the court construed the contract incorrectly. The court was trying to construe the contract in accordance with Section 513 of 505 of the Illinois Marriage and Dissolution of Marriage Act, and frankly, you almost can't do this. Either the contract trumps the statute, or this case needs to be reversed and then reheard in accordance with the statute. And the only one that applies in this case is Section 513. If the court will look at the transcript and the record, the 513 action was withdrawn as we stepped into court before the court could make a determination. So there was no 513 action on file at the time the court made its determination. All that was there was a petition to increase child support based upon Section 505, and Section 505 doesn't apply. Beyond that, a lot has been said about recent court determinations, particularly the Bumgarner case, but ask yourself this. Were in the record, was there enough for the court to make a determination that Corey was even living, not independent? There was nothing about, in this record, about whether he could have lived independently or not, just that he had cerebral palsy and he's disabled. But the fact that one has cerebral palsy and is disabled does not mean you're living, you know, that you're unemancipated. It just means you're disabled. If every disabled adult were considered to be an unemancipated adult, well, I think I've made the point. In any event, thank you very much. Thank you both gentlemen for your briefs and arguments, and we'll take a matter under advisement. This court stands adjourned.